NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TIFFANY L., GREGORY C., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, P.C., *Appellees*.

No. 1 CA-JV 19-0355
FILED 5-19-2020

Appeal from the Superior Court in Maricopa County
No. JD35891
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Tiffany L.*

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Gregory C.*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

¶1        Tiffany L. ("Mother") and Gregory C. ("Father") appeal the juvenile court order terminating their parental rights to their minor child, P.C.  Mother and Father argue the juvenile court abused its discretion in determining the Department of Child Safety (the "Department") met its burden of proof on grounds for termination.  They also argue the juvenile court erred in finding termination was in the best interests of P.C.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Mother and Father are the biological parents of P.C., born in May 2018.  The Department received a report that Mother tested positive for methamphetamine when P.C. was born, and Mother admitted to using methamphetamine throughout her pregnancy with P.C.

¶3        The Department petitioned for dependency a few days later, alleging P.C. was dependent as to Mother on the grounds of her history of substance abuse, domestic violence between Mother and Father, mental health concerns, and an inability to provide for P.C.'s basic needs.  The Department alleged P.C. was dependent as to Father on the same grounds.  At the time, paternity had not been confirmed for Father.  Although he and Mother lived together, he was not listed on P.C.'s birth certificate and declined to participate in Department services.  When a Department intake case worker arrived at Mother and Father's home, Father threatened to throw the case worker "off the balcony if he took my child."

¶4        The Department removed P.C. from the home and placed her in her maternal grandmother's care.  The juvenile court subsequently found P.C. dependent as to Mother and Father.

¶5        Mother admits to long-term substance use, beginning when she was fifteen years old with sporadic periods of sobriety.  In July 2018, she began participating in substance-abuse services with TERROS; for the first few months, her participation was "about 50 percent" before she

participated more regularly. She also engaged in twice-weekly urinalysis tests. Despite a series of negative test results, the Department case manager suspected Mother continued to use illegal substances and ordered a hair-follicle test. In December 2018, the hair-follicle test returned positive for methamphetamine. A second hair-follicle test in May 2019 was also positive for methamphetamine. A May 2019 urinalysis test was positive for marijuana. After each positive test, Mother denied using illegal substances.

¶6 In June 2019, the guardian ad litem ("GAL") representing P.C. moved to terminate Mother's parental relationship with P.C. on the grounds of Mother's illegal substance abuse. As to Father, the GAL moved to terminate his parental rights on the grounds of abandonment and six months' time-in-care. The Department filed a similar motion as to both parents the following day, alleging the same grounds.

¶7 At around the same time, Father contacted the Department and sought to establish paternity and initiate his relationship with P.C. A DNA test confirmed his paternity of P.C. Also around the same time, Mother's participation in TERROS services "dropped off," and TERROS closed her out of services for lack of engagement in July 2019. The Department referred her again to TERROS in August 2019.

¶8 Following a trial, the juvenile court found the Department proved each ground for termination by clear and convincing evidence and found by a preponderance of the evidence termination was in the best interests of P.C. The juvenile court terminated Mother's parental rights based on her history of chronic substance abuse, *see* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), and terminated Father's parental rights on the grounds of abandonment and six months' time-in-care. A.R.S. § 8-533(B)(1), (B)(8)(b). Mother and Father timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## ANALYSIS

¶9 We review the juvenile court's decision to terminate parental rights for abuse of discretion and will affirm the decision unless it is "clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Id.* Because the juvenile court is uniquely positioned to resolve conflicts of evidence, we do not reweigh evidence. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282,

287, ¶ 16 (App. 2016). Accordingly, on appeal, we review the juvenile court's findings of facts for clear error, viewing the evidence in the light most favorable to affirming its decision. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13 (App. 2010).

   I.   *Mother*

**¶10**        Before the juvenile court terminates parental rights under A.R.S. § 8-533(B)(3), it must find by clear and convincing evidence (1) the parent has a history of chronic abuse of controlled substances; (2) the parent is unable to discharge her parental responsibilities because of her chronic abuse of controlled substances; and (3) reasonable grounds exist to believe the condition will continue "for a prolonged and indeterminate period." *Raymond F.*, 224 Ariz. at 377, ¶ 15; *see Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The juvenile court must also find the Department "had made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

**¶11**        On appeal, Mother does not dispute the juvenile court's finding that she has a history of chronic substance abuse. She argues the Department failed to prove that she was unable to discharge her parental responsibilities and that there are reasonable grounds to believe her substance use will continue for a prolonged, indeterminate period.

**¶12**        First, Mother contends the record does not support the juvenile court's finding that she was unable to discharge her parental responsibilities due to her substance use, citing her commitment to TERROS services, the Department's assessment that she had "enhanced her protective capacities," and her successful completion of parent-aide services. "The term [parental responsibilities] is not intended to encompass any exclusive set of factors but rather to establish a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case before determining the parent's ability to discharge his or her parental responsibilities." *Maricopa Cty. Juv. Action No. JS-5894*, 145 Ariz. 405, 409 (App. 1985).

**¶13**        Although the evidence supports Mother's contention that she demonstrated progress, it does not change the fact that Mother's chronic substance use has interfered with her ability to parent. At trial, Mother testified that she had secured employment and housing, but she had not completed a substance-abuse program. She testified she began using methamphetamine approximately fifteen years earlier with some periods

of sobriety, and testified she used methamphetamine approximately "weekly" throughout her pregnancy. Mother admitted "[m]ost of the time it's stress" that triggers her use of methamphetamine. She also testified she completed a third-party hair-follicle test after the May 2019 test requested by the Department; she disclosed the third-party test was also positive for methamphetamine. Despite the positive hair-follicle tests, Mother insisted she had "not used since before that baby was born."

¶14        Mother insists she had maintained sobriety since P.C.'s birth and her substance-abuse treatment, but the juvenile court noted Mother's positive hair-follicle tests and found "no evidence presented to explain the disparity in the science versus her claims that she's not using." Accordingly, the juvenile court found "concerns that Mother has not made the behavior changes needed" regarding her substance use. We find no clear error in the juvenile court's assessment of credibility and its finding of facts, and no abuse of discretion in its finding that Mother is unable to discharge her parental responsibilities because of her substance use.

¶15        Mother also argues reasonable evidence does not support the juvenile court's finding that her substance use will continue for a prolonged, indeterminate period. She contends the Department did not present evidence "to explain the discrepancy between [Mother's] 100 negative random urine tests and her positive hair follicle tests."

¶16        In determining whether sufficient evidence supports the juvenile court's findings on this requirement of A.R.S. § 8-533(B)(3), "[i]t is not the number of times that [Mother] has tested positive or negative for drug abuse that is key, but rather, it is the fact that [she] has consistently failed to *abstain* from drugs." *Raymond F.*, 224 Ariz. at 379, ¶ 29. The record indicates Mother has a fifteen-year history of methamphetamine use, with periods of sobriety followed by relapse; furthermore, she testified at trial that she had not yet completed a substance-abuse program. The juvenile court found that the positive hair-follicle tests "as recent as August of 2019 . . . suggest[] that she continues to use methamphetamine." Mother essentially asks us to resolve this conflict in the evidence—that we, in effect, reweigh the evidence of her negative urine tests and her testimony that she "had been sober for 500 days" against the evidence of the hair-follicle test results. We will not do so. *Jesus M.*, 203 Ariz. at 282, ¶ 12; *see also Jennifer S.*, 240 Ariz. at 287, ¶ 16 ("[T]he resolution of conflicts in the evidence is uniquely the province of the juvenile court . . . ."). We find on this record sufficient evidence exists for the juvenile court to have reasonably concluded that Mother's chronic substance use would continue for a

prolonged indeterminate period and would also continue to interfere with her ability to parent.

¶17 Finally, Mother argues that the Department did not use reasonable efforts to reunify the family because it failed to provide Mother with individual counseling with a domestic-violence component pursuant to a court order. The Department provided Mother with services related to her substance use, including substance-abuse assessment and treatment, substance testing, and parent-aide services. At trial, the Department case manager for Mother admitted she did not refer Mother for such domestic-violence counseling, citing a consultation with a psychiatrist who determined counseling would not be appropriate at the time because Mother was not fully participating in substance-abuse services. Mother self-referred to Cradles to Crayons for trauma therapy and spent a year on the waitlist before beginning services in July 2019. A trauma clinician with Cradles to Crayons testified that Mother had been engaged in trauma therapy for six sessions and noted "it works best" if trauma and addiction are addressed simultaneously. The juvenile court found the Department case manager's testimony "highly troubling," but, after weighing the evidence, it found no evidence "to suggest that even had that [domestic-violence counseling] service been put in place [any earlier] that Mother would have overcome her substance abuse." Accordingly, we accept the juvenile court's findings that the Department made reasonable efforts to reunite the family because the juvenile court is better situated to evaluate "the effectiveness and impact of the services provided." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 15 (App. 2014).

¶18 We find no abuse of discretion in the juvenile court's finding the ground for terminating Mother's parental rights under A.R.S. § 8-533(B)(3) was clearly established.

## II. *Father*

¶19 Although Father admits his thirteen-month absence from P.C.'s life creates a presumption of abandonment, *see* A.R.S. §§ 8-531(1), -533(B)(1), he argues the juvenile court erred in finding he did not overcome that presumption when he initiated a relationship "over the four months prior to the termination trial."

¶20 When determining whether a parent has abandoned a child, the juvenile court evaluates the objective evidence of the parent's conduct, not the parent's subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249-50, ¶ 18 (2000). "The burden to act as a parent rests with the

parent, who should assert his legal rights at the first and every opportunity." *Id.* at 251, ¶ 25. In his testimony, Father admitted he did not attempt to engage with the Department or otherwise attempt to reunify with P.C. for more than one year. He acknowledged the Department contacted him at the outset of the dependency case to request he engage in services, and he stated he was familiar with the Department's reunification process.

¶21 Father consciously chose not to take steps to establish paternity or engage in Department services until more than a year after P.C.'s birth, despite the Department's outreach. The Department is not required to leave "the window of opportunity for remediation [of a ground for termination] open indefinitely." *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). On this record, we find no abuse of discretion in the juvenile court's finding that Father abandoned P.C. pursuant to A.R.S. §§ 8-531(1) and -533(B)(1).

¶22 Father also argues the juvenile court erred in finding evidence sufficient to terminate his rights for six months' time-in-care pursuant to A.R.S. § 8-533(B)(8)(b). Because we affirm the juvenile court's order based on the ground of abandonment, we do not address the time-in-care ground. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577-78, ¶ 5 (App. 2017). Finally, Father argues that the juvenile court made improper findings regarding Mother that prejudiced its decision to terminate his parental rights. As we find no error in the juvenile court's findings as to Mother, we do not reach this argument from Father.

### III. Best Interests

¶23 Once the juvenile court finds the grounds to terminate a parent's rights have been established, it must find by a preponderance of the evidence that termination is in the best interests of the child. *Raymond F.*, 224 Ariz. at 379, ¶ 30. This standard may be met if the juvenile court finds the child's current placement meets the child's needs and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3-4, ¶ 12 (2016). Courts consider the "totality of the circumstances existing at the time of the severance determination," including a parent's efforts to rehabilitate. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150-51, ¶¶ 13, 15 (2018). The parents' liberty interests in the care and control of their child, however, are necessarily diluted when measured against the child's interest in stability and security. *Demetrius L.*, 239 Ariz. at 4, ¶ 15; *see Kent K.*, 210 Ariz. at 286, ¶¶ 34-35.

¶24    Mother and Father both argue the juvenile court erred in finding termination of their parental rights to be in the best interests of P.C. Mother argues the juvenile court did not properly consider her rehabilitation efforts and her therapist's testimony that she could continue to improve with more time in services.  But P.C.'s interest in permanency must prevail over Mother's "uncertain battle with drugs." *See Raymond F.*, 224 Ariz. at 379, ¶ 29.  Father again argues the juvenile court erred in terminating Mother's rights and that those errors affected its consideration of best interests as to him.  As noted above, the juvenile court did not err as to Mother's ground for termination.  Father's argument as to best interests, therefore, similarly fails.  The record indicates P.C. is in placement with her maternal grandmother, who is meeting the child's needs and is willing to adopt her.  Reasonable evidence supports the juvenile court's finding that termination was in the best interests of P.C.

## CONCLUSION

¶25    For the foregoing reasons, we affirm the juvenile court's order terminating Mother and Father's parental rights to P.C.

